NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AJAZ RAJA YUNUS<br><br>           Petitioner,<br><br>v.<br><br>JOHN A. ASHCROFT, Attorney General of the United States; TOM RIDGE, Secretary, Department of Homeland Security; MICHAEL J. GARCIA, Assistant Secretary, U.S. Immigration and Customs Enforcement; JOHN CARBONE, Field Office Director, Newark, Immigration and Customs Enforcement; ANDREA J. QUARANTILLO, District Director, Newark, U.S. Citizenship and Immigration Services; and JOSEPH T. CASSIDY, Sheriff, Hudson County,<br><br>           Respondent(s). | Civ. No. 04-1702 (WGB)<br><br>O P I N I O N |

Appearances

Raymond P. D'Uva, Esq.
17 Academy Street, Suite 1000
Newark, New Jersey 07102

    Counsel for Petitioner

Christopher J. Christie
United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102

    Counsel for Respondents

**BASSLER, DISTRICT JUDGE:**

    Petitioner Ajaz Raja Yunus ("Petitioner"), a deportee who

has been detained by the Department of Homeland Security ("DHS")

at The Hudson County Correctional Facility in South Kearney, New Jersey since December 29, 2003, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a complaint for declaratory and injunctive relief.  Petitioner seeks to enjoin his current detention, arguing that it is unlawful, excessive, and in violation of both the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment.  For the reasons set forth below, this Court lacks subject matter jurisdiction to address this petition and shall transfer this claim to the appropriate United States Court of Appeals.

I.   BACKGROUND

Petitioner, a native and citizen of Pakistan, entered the United States on or about September 18, 1990 as a non-immigrant visitor with authorization to remain in the United States for a period not to exceed one year.  Without authorization from the Immigration and Naturalization Service ("INS"), Petitioner remained in the United States beyond that one year period.  Accordingly, on July 17, 2000, the INS issued a Notice to Appear charging that Petitioner was subject to removal from the United States pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA").

On June 6, 2001, Petitioner was ordered removed, in absentia, by Chicago Immigration Judge James R. Fujimoto.  Judge

2

Fujimoto found that the evidence presented by the INS supported the allegations contained in the Notice to Appear and provided a basis for removability.  Therefore, where the Petitioner failed to appear and establish entitlement to any form of relief from deportation, he was ordered removed to Pakistan.

On December 29, 2003, after an encounter stemming from a traffic stop, a record check disclosed the order of removal. Petitioner was arrested by the New Jersey State Police and turned over to the DHS.  Petitioner has been detained by the DHS since that time.

On March 4, 2004, Petitioner applied for a change in custody status pursuant to 8 C.F.R. § 236.1(c).  Petitioner argued that because he had a pending Legal Immigration Family Equity Act ("LIFE Act") application, he was improperly detained and entitled to release from custody.  Specifically, Petitioner relied on provisions within the LIFE Act which stay the execution of any final orders of removal, 8 C.F.R. § 245a.13(f) and authorize a LIFE Act applicant to engage in employment, 8 C.F.R. § 245a.13(a)(2).  Petitioner's request was denied by the United States Immigration and Customs Enforcement ("ICE") on the ground that the court had no jurisdiction to change the Petitioner's custody status.

It was the position of the ICE that as a result of having been removed <u>in absentia</u> and subject to a final order removal,

3

the court was without authority to change Petitioner's custody status.  United States Immigration Judge Henry S. Dogin, after conducting a hearing to evaluate Petitioner's request, agreed with the ICE and ordered that the request be denied on March 30, 2004.  Judge Dogin found nothing in the LIFE Act regulations which would give the court the power it did not otherwise have to reopen Petitioner's removal proceedings.

On May 21, 2004, the Board of Immigration Appeals ("BIA") affirmed Judge Dogin's denial of Petitioner's application. Agreeing with Judge Dogin, the BIA found that an immigration judge only has the authority to redetermine conditions of custody before the entry of a final order of removal.

On August 19, 2004, Petitioner's application for permanent residence under the LIFE Act was denied by the DHS.  Petitioner now asks this Court to provide him with declaratory and injunctive relief and grant him a writ of habeas corpus. Petitioner contends that his detention is contrary to the regulations promulgated under the LIFE Act and, as a result, excessive and in violation of his constitutional rights to due process and equal protection.

II.  DISCUSSION

    A.  Jurisdiction

Petitioner claims that his petition addresses the specific and narrow issue regarding his detention status, but does not

address his final order of removal.  "The [P]etitioner is not asking this court to make a determination that the Petitioner is not deportable pursuant to the decision of the IJ in Chicago dated, June 6, 2001 but rather is asking this court to review Petitioner's custody status and make a determination whether or not the Petitioner's continued detention by ICE is legally authorized."  Pet'r Letter Br. of 4/25/05 at 3.  However, the issues here are not as neat and divisible as Petitioner contends.  Despite the manner in which Petitioner characterizes his claim, this court must look at the actual nature of the claim to determine what Petitioner is seeking.  See Duvall v. Elwood, 336 F.3d 228, 233 (3d Cir. 2003)("Duvall claims further that she is only seeking to review her detention by the Service - a detention from which she has been released.  Yet, this deliberate phrasing of her claim, when she is really challenging the collateral estoppel ruling, cannot escape the jurisdictional requirement...").  A review of a final order has "long been understood 'to include[] all matters on which the validity of the final order is contingent.'" Id. (quoting INS v. Chadha, 462 U.S. 919, 938 (1983)).  Here, Petitioner's detention is a direct result of his final order of removal.  As noted by U.S. Immigration Judge, Henry S. Dogin, in his decision and order, dated March 30, 2004, 8 C.F.R. § 236.1(d) does not allow review of issues dealing with detention status after the issuance of a

final order of removal.

> The respondent may, at any time **before an order under 8 C.F.R. part 1240 becomes final**, request amelioration of the conditions under which he or she may be released. **Prior to such final order**, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act (or section 242(a)(1) of the Act as designated prior to April 1, 1997 in the case of an alien in deportation proceedings) to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in §§ 1003.19 of this chapter.  8 C.F.R. § 236.1(d)(emphasis added).

The June 6, 2001 hearing was the proper time and place to address the issues regarding his custody status independently from the issues regarding his removal.  Petitioner had the opportunity to argue and address all of his detention issues, including a possible conditional release.  However, Petitioner's failure to appear directly led to the omission of these issues and once Immigration Judge Fujimoto issued the order of removal, both issues became intertwined.  Thus, Petitioner's absence from that hearing thereby leaves only one avenue for attacking his custody status, attacking the final order of removal itself.  This court does not have the jurisdiction to take on such a review.  Such jurisdiction lays in the appropriate United States Court of Appeals.  8 U.S.C. § 1252; Muhanna v. Gonzalez, 399 F.3d 582, 587 (3d. Cir. 2005); Mulanga v. Ashcroft, 349 F.3d 123, 131 (3d. Cir. 2003); see also Massieu v. Reno, 91 F.3d 416, 422 (3d. Cir. 1996)("Following final administrative action, the 'sole and exclusive procedure' for obtaining judicial review of

deportation orders is by direct review in the appropriate United States Court of Appeals."). Therefore, the filing of a petition for a writ of habeas corpus with the District Court is inappropriate at this time and this Court cannot address the merits of the petition.

Because this Court does not have proper subject matter jurisdiction to address the issues raised in this petitioner and in the interest of justice, this matter shall be transferred to the Third Circuit Court of Appeals pursuant to 28 U.S.C. § 1631. An appropriate order follows.


                                        s/ William G. Bassler
                                         William G. Bassler,
                                              U.S.S.D.J.


Dated: May 19, 2005

7